GARY SUTTER,                       )

                               )

     **Plaintiff,**             )

                                 )

     **v.**                       )   **CAUSE NO. 1: 11-CV- 83**

                                 )

**SOUTH WHITLEY POLICE OFFICERS**     )

**RICK CARROLL AND JESSICA LEWIS,**    )

                                 )

     **Defendants.**           )

## OPINION AND ORDER

## I. INTRODUCTION

In this lawsuit brought under 42 U.S.C. § 1983, Plaintiff Gary Sutter contends that, after

a night of drinking, and during the early morning hours of August 23, 2009, he was driving to his

home in South Whitley, Indiana. He came to the attention of Defendants, South Whitley police

officers Rick Carroll and Jessica Lewis, when his motorcycle tipped over at an intersection.

Once back on the motorcycle, Carroll and Lewis followed Sutter in their squad car, using the

car's emergency lights and loudspeaker in an attempt to pull him over. Although aware of the

lights and directions to pull over, Sutter led Carroll and Lewis on what he describes as a slow

speed "vehicle pursuit" for about ninety seconds, until he reached the driveway of his home.

The officers' actions that immediately followed while arresting Sutter are the basis for

his claims that he was subjected to excessive and unreasonable force in violation of the Fourth

and Fourteenth Amendments and a civil battery under Indiana state tort law.[1] In short, Sutter

---

[1] Subject matter jurisdiction arises under 28 U.S.C. § 1331. Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting. (Docket # 14.)

claims that Carroll put him into a right arm bar, and, while pulling up on his arm hard enough to dislocate his shoulder, took him to the ground. Once on the ground, Sutter alleges that Carroll repeatedly bashed his head into the asphalt driveway and that eventually Carroll, with Lewis's assistance, handcuffed him, but because he had just sustained a shoulder injury, the cuffs caused him pain. Sutter further claims that Lewis ignored his complaints of pain until medics arrived.

In the present motion, however, Defendants maintain that they are entitled to summary judgment because the force used to arrest Sutter was reasonable as a matter of law, that Lewis has no bystander liability—either because the force Carroll employed was reasonable or because Lewis had no reasonable opportunity to intervene—and that, regardless, they are entitled to qualified immunity. Concerning the civil battery claim, Carroll and Lewis argue that Sutter has not brought a cognizable claim under the Indiana Tort Claims Act ("ITCA"), Indiana Code § 34-13-3-1 *et seq.*, but that they are nevertheless entitled to law enforcement immunity.

For the following reasons, Defendants' Motion for Summary Judgment (Docket # 26) will be DENIED IN PART and GRANTED IN PART.

## II. FACTUAL BACKGROUND[2]

There does not appear to be much dispute that Sutter was intoxicated in the early morning of August 23, 2009. In fact, his blood alcohol level, taken after his arrest, was .24, or three times the legal limit. (Sutter Dep. 20.) Perhaps this explains why his motorcycle fell over in a South Whitley, Indiana intersection.

---

[2] For summary judgment purposes, the facts are recited in the light most favorable to Sutter, the nonmoving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Moreover, the Court has reviewed the dash camera video submitted by the Defendants. (Docket # 29.) While it provides some audio evidence, it provides very little visual evidence because of the poor lighting conditions. As such, its content was not particularly useful to the summary judgment determination.

At any rate, Lewis and Carroll observed a male person picking up a motorcycle from the roadway, probably an unusual occurrence at any time and certainly suspicious at 12:25 a.m., so Lewis activated her emergency lights and pulled behind the motorcycle. (Lewis Aff. ¶ 5; Carroll Aff. ¶ 5.) Once behind the motorcycle, they observed the driver having difficulty getting onto it. (Lewis Aff. ¶ 6; Carroll Aff. ¶ 6.) Although the squad car's flashing emergency lights were on, the driver took off with Lewis and Carroll in pursuit and their squad car's siren blaring in an effort to pull the driver over. (Lewis Aff. ¶¶ 7-8; Carroll Aff. ¶ 7.)

The driver, Sutter, did not pull over although he easily could have done so. (Lewis Aff. ¶ 7; Carroll Aff. ¶ 7; Sutter Dep. 59.) During this so-called ninety second pursuit over the next half-mile, Sutter ran a red light, drove left of center, and continued to ignore the squad car's lights and sirens. (Lewis Aff. ¶¶ 9-10; Carroll Aff. ¶¶ 9-10; Sutter Dep. 54-55.) Eventually, when he reached his home, Sutter drove into the driveway, stopped, and shut off the motorcycle. (Lewis Aff. ¶ 11; Sutter Dep. 59.)

Lewis and Carroll were concerned that the driver may pose a danger so both exited the squad car. (Lewis Aff. ¶¶ 12-13; Carroll Aff. ¶¶ 12-13.) As they approached, Lewis could smell alcohol on the driver. (Lewis Aff. ¶ 14.) Carroll repeatedly asked Sutter for his driver's license, but instead of complying, Sutter got off his motorcycle. (Lewis ¶¶ 15-17; Carroll, ¶¶ 13-14.) At this point, both Carroll and Lewis observed Sutter make a move; Lewis believed that Sutter was simply removing his coat (Lewis Aff. ¶ 16), while Carroll perceived Sutter to be reaching for an unknown object (Carroll Aff. ¶ 14).

Thinking now that they had probable cause to arrest Sutter, who was still unknown to them, Carroll twice ordered Sutter not to move, but to also put his hands behind his back.

(Carroll Aff. ¶ 16.)  Before Sutter complied, or perhaps before he had an opportunity to comply, Carroll grabbed Sutter's left arm in an attempt to place him in hand restraints.  (Lewis Aff. ¶ 20; Carroll Aff. ¶ 17.)  Sutter pulled away as a reflex to the pain of having his arm pulled and told Carroll that his actions were hurting him.  (Sutter Dep. 83; Smith Dep. 37, 44, 71; Lewis Case Report 2.)  Carroll then grabbed Sutter's other arm, exclaiming, "to hell with the cuffs," put Sutter into an arm bar, and took him to the ground.  (Sutter Dep. 83-84.)  Sutter's head hit the ground on impact.  (Smith Dep. 45.)  During the arm bar, Carroll pulled Sutter's right arm up behind his back, dislocating his shoulder.  (Sutter Dep. 89-90; Sutter Aff. ¶ 4.)

Now on the ground, Carroll held Sutter down with his knee in Sutter's back and began bashing Sutter's head into the driveway three or four times.  (Smith Dep. 46, 49, 71.)  At this point, Sutter's live-in girlfriend, Jeanne Smith, who had been watching from the house since Sutter's arrival, became concerned and went outside to ask Carroll to stop.  (Smith Dep. 46-47, 71-72.)  Smith became worried that Carroll would not stop and called the Sheriff's Department to come to the scene.  (Smith Dep. 48-49.)  Eventually, Carroll and Lewis handcuffed Sutter, double locking the cuffs.  (Lewis Aff. ¶ 21; Carroll Aff. ¶ 18; Carroll Case Report 2.)

Once Sutter was in hand restraints, he began to complain about pain in his shoulder.  (Lewis Aff. ¶ 22; Carroll Aff. ¶ 19; Lewis Case Report 2.)  Sutter also told Carroll that he had a torn rotator cuff injury in his right shoulder.  (Carroll Case Report 2.)  Consequently, Carroll picked Sutter up by his torso and placed him into the back of the police vehicle.  (Carroll Aff. ¶ 22.)  At that point, the officers noticed that Sutter had a small laceration above his eye, and medics came to evaluate the injury.  (Lewis Aff. ¶ 28; Carroll Aff. ¶ 23.)

When the medics arrived, it was determined that Sutter should go to the hospital for

evaluation.  (Lewis Aff. ¶ 30.)  Lewis then removed the handcuffs and reapplied them with Sutter's hands in front.  (Lewis Aff. ¶ 30.)  Sutter was subsequently transported to Whitley County Hospital.  (Carroll Aff. ¶ 26; *see* Lewis Aff. ¶ 31.)  Emergency room records from Whitley County Hospital indicate that Plaintiff received three diagnoses: (1) right shoulder dislocation; (2) a 2.4 cm brow laceration; and (3) intoxication.  (Sutter Dep. 180-81.)  With respect to the brow laceration, the records indicate that it was of mild depth with no significant swelling.  (Sutter Dep. 186-87.)  The records further reflect that, other than the laceration, "the remainder of the head and face was without further evidence of trauma, such as swelling, ecchymoses [bruising], tenderness or deformity."  (Sutter Dep. 187.)

As a result of this incident, Sutter pled guilty to Operating a Vehicle While Intoxicated, a Class D felony; and Resisting Law Enforcement, a Class A misdemeanor.  (Sutter Dep 149-50.)  At his plea hearing, Sutter admitted that he should have submitted to the officers' authority and allowed himself to be handcuffed, but he failed to do so.  (Sutter Dep. Ex. C at 4.)  Sutter maintains, however, that the resistance he admitted to in court was pulling his left arm away from Carroll right after he got off his motorcycle.  (Sutter Aff. ¶ 6.)

In light of these facts, Defendants believe that all force applied against Sutter was objectively reasonable and necessary to arrest him.  (Lewis Aff. ¶¶ 33-36; Carroll Aff. ¶¶ 27-28.)  They further maintain that, in connection with the bystander liability claim, since no excessive force was used, Lewis had no cause, reason, or opportunity to intervene between Carroll and Sutter.  (Lewis Aff. ¶ 37.)

### III.  STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of

material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 507 (7th Cir. 2010) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

### A. Sutter's Claims Under 42 U.S.C. § 1983

Sutter advances excessive force claims under § 1983 against Carroll based on his alleged use of unreasonable force and against Lewis on her failure to intervene to prevent or stop such force from being used. The Court will address each of these claims in turn.

#### 1. Officer Carroll's Alleged Use of Excessive Force

A claim of "excessive force . . . in the course of an arrest . . . [is] properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 388 (1989); *see also Scott v. Harris*, 550 U.S. 372, 381 (2007). This gives rise to the

overarching question, "whether [the officer's] actions were objectively reasonable." *Scott,* 550 U.S. at 381. Answering this question "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

At bottom then, the inquiry focuses on whether the officers' actions were "'objectively reasonable' in light of the facts and circumstances confronting them." *Id*. at 397. This means that the Court must view the matter "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396. Consequently, a "police officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 778 (citation omitted); *see also Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985) (stating that the court must look to whether the totality of the circumstances justified the seizure).

Here, as the Court construes the record, Sutter alleges that Carroll used excessive force in the following three instances: (1) using the arm bar takedown technique and pulling up on Sutter's arm hard enough to dislocate his shoulder during the initial handcuffing; (2) repeatedly bashing Sutter's head on the ground; and (3) failing to adjust the handcuffs once Sutter complained of pain. Rather than treating these incidents separately, the Court views them as a single, continuous event. *See Payton v. Fike*, No. 1:09-CV-222, 2010 WL 3326130, at *4-5 (N.D. Ind. Aug. 24, 2010) (treating an officer's initial slam or tackle of the plaintiff and his subsequent use of a "brachial stun" as a single event); *Griffin v. Morrin*, No. 08 C 5776, 2010 WL 3190221, at *5-6 (N.D. Ill. Aug. 11, 2010) (considering the initial takedown and

handcuffing of the plaintiff along with the plaintiff's complaint of too-tight handcuffs). When crediting Sutter's version of the events, his excessive force claim against Carroll is viable.

It is well settled that "[a]n officer who has the right to arrest an individual also has the right to use some degree of physical force or threat of force to effectuate the arrest." *Stainback v. Dixon*, 569 F.3d 767, 772 (7th Cir. 2009) (citing *Graham*, 490 U.S. at 396). At the same time, however, "that right is circumscribed by the Fourth Amendment's insistence on reasonableness." *Id.* The Seventh Circuit Court of Appeals has "indicate[d] that an officer may not knowingly use handcuffs in a way that will inflict unnecessary pain or injury on an individual who presents little or no risk of flight or threat of injury." *Id.* (citing *Herzog v. Vill. of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002)). And the circumstances of the arrest will determine whether an officer knows that a given action will unnecessarily harm a particular individual. *Id.* Therefore, while "[i]n some cases, the fact that an act will cause pain or injury will be clear from the nature of the act itself," in others, "it may become clear to an arresting officer that, although a particular action would not ordinarily harm an arrestee, the action would nevertheless cause pain or injury to the particular individual being placed under arrest." *Id.* (citation omitted). In this latter type of case, "a reasonable officer cannot be expected to accommodate an injury that is not apparent or that otherwise has not been made known to him." *Id.* at 773.

In the instant case, although Carroll had the right to use some degree of force to arrest Sutter, *Stainback*, 569 F.3d at 772, a reasonable jury could conclude that the force used was excessive and unreasonable. Sutter contends that Carroll putting him in a right arm bar, taking him to the ground, and twisting his right arm until he was handcuffed constituted excessive force. (Pl.'s Mem. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem. in Opp.") 9.) Of course,

"from the perspective of a reasonable officer on the scene," *Graham*, 490 U.S. at 396, which is the relevant viewpoint here, *Smith v. City of Chicago*, 242 F.3d 737, 743-44 (7th Cir. 2001), Carroll's use of the right arm bar takedown on Sutter might well have been reasonable. It is undisputed that Carroll and Lewis pursued Sutter for half a mile, at a low speed, using their squad car's lights and siren, before Sutter pulled into his driveway and stopped, so there was certainly some objective evidence of flight. *See id*. (explaining that it is the officer's point of view that is relevant).

On the other hand, although Sutter refused to pull over for a half a mile until he reached his driveway, by the time Carroll applied the force, Sutter was no longer fleeing and had turned off and dismounted his motorcycle, thus eliminating any possible danger to pedestrians or other traffic in the area. *Cf. Lawrence v. Kenosha Cnty.*, 391 F.3d 837, 842 (7th Cir. 2004) (finding that the force used to handcuff plaintiff was not excessive when plaintiff failed to produce his driver's license, was combative and irrationally angry, and his vehicle was in motion as he argued with the officer, which could have led the officer to reasonably believe plaintiff was posing a danger to pedestrians and stopped traffic in the area). Furthermore, if, as Sutter contends, he was no longer resisting or evading arrest or threatening harm to anyone, a reasonable jury could conclude that it was not objectively reasonable for Carroll to pull Sutter's arm up behind his back with enough force to dislocate his shoulder. *See Payne*, 337 F.3d at 779 (holding that it was not objectively reasonable for the officer to twist the plaintiff's arm, force her arms behind her back, and over-tighten her handcuffs to the point of causing numbness and significant injury when the plaintiff had not threatened harm to anyone, was not resisting or evading arrest, and was charged with the minor offense of disorderly conduct).

But the chain of events does not stop there.  According to Sutter and Smith, once Sutter was on the ground—but before the handcuffs were on—Carroll bashed his head into the ground three or four times.  Therefore, regardless of whether Carroll's initial takedown of Sutter was reasonable, a jury could conclude that bashing Sutter's head into the ground three or four times was excessive.  *Payton*, 2010 WL 3326130, at *5.

Defendants ask that the Court view this head bashing claim with skepticism, particularly since Sutter first mentioned it in his Complaint (Reply in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Reply") 3), and because he is "not a reliable source of information" (Defs.' Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") 3).  Similarly, as to Smith's eyewitness account, Defendants insist that her testimony is "entitled to no credit" since she was inside the house looking through window blinds and thus could not accurately see the events.  (Defs.' Reply 3.)  But, in making such arguments, Defendants have misconstrued the Court's role in deciding a summary judgment motion.  The Court must view the record in the light most favorable to Sutter, the nonmoving party, and *avoid* the temptation to decide which party's version of the facts is more likely true; furthermore, it *cannot* make credibility determinations or weigh the evidence, *Payne*, 337 F.3d at 770, which is exactly what Defendants impermissibly urge the Court to do.

Therefore, once Sutter's version of the facts is accepted as true, "it is difficult to conceive of a reasonable explanation for [Carroll's] conduct, and a jury could readily conclude that [Carroll] used excessive force in [bashing Sutter's head into the ground.]"  *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 686 (7th Cir. 2007).  Indeed, "a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders."  *Hayes v.*

*City of Indianapolis*, No. 1:08-cv-006-DFH-JMS, 2009 WL 700232, at *4 (S.D. Ind. Mar. 16, 2009) (collecting cases); *see also Thomas v. City of Fort Wayne*, No. 1:06-CV-320 PS, 2008 WL 282348, at *5 (N.D. Ind. Jan. 31, 2008) (stating that facts suggesting that plaintiff could have posed a threat to the officers' safety would not justify strikes to the plaintiff's head *after* officers determined he was not resisting arrest). "Even 'one violent push and poke' will constitute excessive force when there is no provocation." *DuFour-Dowell v. Cogger*, 969 F. Supp. 1107, 1120 (N.D. Ill. 1997) (quoting *Lanigan v. Vill. of East Hazel Crest, Ill.*, 110 F.3d 467, 475-76 (7th Cir. 1997)); *accord Clash v. Beatty*, 77 F.3d 1045, 1048 (7th Cir. 1996) ("[P]olice officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever."); *Norris v. Bain*, No. 1:04-CV-1545, 2006 WL 753131, at *14 (S.D. Ind. Mar. 21, 2006) ("[It is] well established that the use of force unnecessary for an arrest, particularly where force is applied to a suspect who is not fleeing or resisting, and who has been overcome, cannot be considered constitutionally reasonable."); *Hill v. Miller*, 878 F. Supp. 114, 116 (N.D. Ill. 1995) ("[T]he use of any significant force . . . not reasonably necessary to effect an arrest—as where . . . the force is used after a suspect's resistance has been overcome or his flight thwarted—would be constitutionally unreasonable.").

Moreover, although the parties dispute whether Sutter received any injuries in this alleged head bashing, this is irrelevant as the Seventh Circuit has explained that a "significant injury is not required for Fourth Amendment excessive force claims . . . ." *Rambo v. Daley*, 68 F.3d 203, 207 n.2 (7th Cir. 1995); *see also Herzog*, 309 F.3d at 1043 ("The Fourth Amendment protects against unreasonable seizures, not seizures that 'shock the conscience' or cause 'severe injuries.'" (quoting *Lester v. City of Chicago*, 830 F.2d 706, 712 (7th Cir. 1987)). Regardless of

the existence and extent of any injuries, Sutter's purported lack of injuries "does not rule out the possibility that [Carroll] employed force that was not reasonably necessary to secure [him]." *Holmes*, 511 F.3d at 687.  Indeed, "[a] factfinder might conclude that [Sutter's] injuries were slight but nonetheless find that [Carroll] employed more force than was justified."  *Id*. (collecting cases).

Of course, the Supreme Court has instructed that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'"  *Payne*, 337 F.3d at 779 (quoting *Graham*, 490 U.S. at 396-97).  Nevertheless, even given this flexibility, a jury could conclude that Carroll's force in bashing Sutter's head into the ground three or four times, when Sutter was allegedly not threatening anyone and was no longer resisting or evading arrest, was not objectively reasonable.  *See id*.; *cf. Duran v. Sirgedas*, 240 F. App'x 104, 118 (7th Cir. 2007) (unpublished) (finding no excessive force where officer hit plaintiff in the head with his fist to subdue him and plaintiff admitted to resisting arrest by, among other things, biting and struggling with the officers).

Finally, Sutter alleges that the failure to adjust his handcuffs after he complained of pain was excessive and unreasonable force.[3]  The Seventh Circuit has occasionally recognized valid excessive force claims based on overly tight handcuffs.  *Tibbs v. City of Chicago*, 469 F.3d 661, 666 (7th Cir. 2006); *see Payne*, 337 F.3d at 774-75, 781 (holding that summary judgment was

---

[3] It is unclear whether Sutter alleges that both Carroll and Lewis used excessive force in not adjusting his handcuffs.  But because Sutter seemingly confines his claims against Lewis to those of bystander liability, the Court will assume Sutter is alleging that only Carroll used excessive force in not adjusting the handcuffs.

inappropriate when there was evidence that arresting officers handcuffed the plaintiff so tightly she lost feeling in her hands—necessitating two carpal tunnel surgeries—and refused to loosen the cuffs when she told them of the numbness); *Herzog*, 309 F.3d at 1042-43 (refusing to loosen plaintiff's chafing handcuffs constitutes excessive force in a case where plaintiff had violated no law, was arrested without probable cause, and did not resist). In *Tibbs*, the Seventh Circuit held that the plaintiff could not survive summary judgment because he had complained to the officer only once about his handcuffs without elaborating on an injury, numbness, or degree of pain; was handcuffed for about twenty-five to thirty minutes; experienced redness on his wrist for less than two days; and did not seek or receive medical care for any alleged wrist injury. 469 F.3d at 666; *see also Stainback*, 569 F.3d at 773 (holding that generalized complaints, without any elaboration regarding a preexisting injury or other infirmity, would not have placed a reasonable officer on notice that the plaintiff would be injured by their actions).

Here, Sutter complained multiple times to the officers about shoulder pain—alternatively, the left and the right—and indicated to Carroll that he had a torn rotator cuff in one of his shoulders.[4] *See Hogue v. City of Fort Wayne*, 599 F. Supp. 2d 1009, 1029-30 (N.D. Ind. 2009) (denying motion for summary judgment when plaintiff told the defendant officer multiple times during the arrest that the officer was breaking his arm); *cf. Tibbs*, 469 F.3d at 666 (concluding that tight handcuffs did not constitute excessive force where plaintiff complained of pain only once to officer and did not communicate his degree of pain); *Cusack v. City of Des Plaines*, No. 06 C 2507, 2007 WL 2484325, at *3-4 (N.D. Ill. Aug. 29, 2007) (same). As it turns out, Sutter

---

[4] The record is unclear as to which shoulder had a prior rotator cuff injury. Sutter's deposition and affidavit suggest that he had previously torn the rotator cuff in his *left* shoulder (*see* Sutter Dep. 83; Sutter Aff. ¶ 2), but Carroll's report indicates that Sutter reported that this injury was in his *right* shoulder (Carroll Case Report 2).

had a dislocated right shoulder, for which he did seek and receive medical care. *Cf. Tibbs*, 469 F.3d at 666 (concluding that tight handcuffs did not constitute excessive force where plaintiff did not seek or receive medical care). And even if he had not needed such care, once again, "significant injury is not required for Fourth Amendment excessive force claims." *Rambo*, 68 F.3d at 207 n.2. Unlike *Stainback*, Sutter gave more than generalized complaints about his shoulders, including mention of a preexisting injury in one of them, putting a reasonable officer on notice that further injury may result without adjustment of the handcuffs. *See Stainback*, 569 F.3d at 773.

And there is more than just painful handcuffing in this case. As noted above, Carroll used a right arm bar takedown to bring Sutter to the ground, pulling up on Sutter's arm hard enough to dislocate the shoulder, and allegedly bashed his head into the ground three or four times when effectuating the arrest even though Sutter maintains he was not resisting. *Compare Payne*, 337 F.3d at 774 (finding that use of force by police officer was excessive where tight handcuffing was coupled with other force), *Herzog*, 309 F.3d at 1043-44 (same), *and Lester*, 830 F.2d at 714 (same), *with Tibbs*, 469 F.3d at 666 (declining to find excessive force where plaintiff's claim relied solely on tight handcuffing). Accordingly, genuine issues of material fact exist for trial on Carroll's alleged use of excessive force under § 1983, precluding summary judgment.

### 2. Officer Lewis's Alleged Failure to Intervene

Turning to Lewis, Sutter seeks to hold her liable for her failure to intervene to prevent or stop Carroll's use of excessive force. An officer who is present and fails to intervene to prevent other law enforcement officers from infringing an individual's constitutional rights is liable

under § 1983 if that officer had reason to know the following: "(1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; *and* the officer had a realistic opportunity to intervene to prevent the harm from occurring." *Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) (emphasis in original) (quoting *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)). Furthermore, "[w]hether an officer had sufficient time to intervene or was capable of preventing the harm caused by the other officer is generally an issue for the trier of fact unless, considering the evidence, a reasonable jury could not possibly conclude otherwise." *Lanigan*, 110 F.3d at 478 (citing *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)).

In deciding whether an officer had a realistic opportunity to intervene, courts may consider, among other factors, the length of the excessive force, the number of blows involved, and the positions of the bystander officers relative to the altercation. *Kirkwood v. DeLong*, 683 F. Supp. 2d 823, 830 (N.D. Ind. 2010); *Laffoon v. City of Portage*, No. 2:09-cv-103, 2011 WL 2293331, at *10 (N.D. Ind. June 8, 2011). When the alleged excessive force consists of only one or two blows in quick succession, an officer may not have had a realistic opportunity to intervene. *See Lanigan*, 110 F.3d at 478 (affirming the 12(b)(6) dismissal of a plaintiff's failure to intervene claim when the only allegations were of a single poke and push and a contemporaneous statement and noting that the bystander officer did not have to throw himself between the officer's finger and the plaintiff's body to interrupt the imminent poke); *Thomas*, 2008 WL 282348, at *8 (finding that a reasonable jury could not possibly conclude that the bystander officers had a chance to stop the force used in pulling the plaintiff out of the car and allegedly striking him in the head and stomping on his legs when it took only seconds to pull the

plaintiff out, the events happened very quickly and may not have been visible to the officers, and the officers were occupied restraining the plaintiff when his legs were allegedly stomped).

On the other hand, if there are multiple, separate blows, the bystander officer was standing close by, and the altercation lasted more than a few seconds, a jury could reasonably find that the bystander officer had reason to know that excessive force was being used and could have stopped it. *Kirkwood*, 683 F. Supp. 2d at 830 (denying summary judgment on failure to intervene claim when the plaintiff presented evidence of three separate blows—a tackle, an arm bar, and a knee to the back—the officers were standing ten feet away or less, and the altercation may have lasted for twenty seconds); *see also Pinkey v. Thomas*, 583 F. Supp. 2d 970, 984 (N.D. Ind. 2008) (denying summary judgment when the bystander officer was clearly present and within an arm's length of both the plaintiff and the acting officer). Moreover, "[t]he speed at which the disputed events actually occurred, and the resulting reasonableness of [the officers'] responses are issues for the jury to decide." *Davis v. Fenimore*, No. 09 CV 939, 2010 WL 1489988, at *3 (N.D. Ill. Apr. 13, 2010).

In *Davis*, the plaintiff alleged that, in a matter of seconds, one officer punched him in the face two to three times, then grabbed the back of his head and slammed it against the vehicle. *Id.* at *2. The bystander officers argued that, because the events happened so rapidly and because of their distance away—one was approximately five to six feet away and the second was a few inches away—it would have been impossible for them to physically intervene. *Id.* The court held that "[a] reasonable juror could find that a person could close a distance of five or six feet [ ] or a few inches [ ] within the time it took for [the acting officer] to accomplish at least some of his ends. Such minimal distances can be traversed in approximately a second or less." *Id.* at *3.

And, the court noted, even if the officers could not have physically intervened, they could have at least told the officer to stop. *Id.* (citing *Yang*, 37 F3.d at 285 (finding sufficient facts to justify failure to intervene action where, "at a minimum," the defendant officer "could have called for backup, called for help, or at least cautioned [the acting officer] to stop")).

Here, a reasonable jury could conclude that Lewis had reason to know that Carroll was using excessive force and that she had a realistic opportunity to intervene to prevent or stop such force. *Chavez*, 251 F.3d at 652; *Yang*, 37 F.3d at 285. According to Sutter, about thirty seconds passed between the initial arm bar takedown and when his hands were finally cuffed. (Sutter Dep. 87.) During this time, Carroll allegedly bashed Sutter's head into the ground three or four times, and Lewis was clearly present, even assisting Carroll in handcuffing Sutter. (Carroll Aff. ¶ 18; Lewis Case Report 2; Carroll Case Report 2.) Given that she was helping Carroll handcuff Sutter, Lewis was, by necessity, close to them. Arguably, she could have traversed this distance, which was presumably only inches, within the time it took Carroll to accomplish at least some of his ends. *See Davis*, 2010 WL 1489988, at *3. Therefore, as Carroll delivered separate, multiple blows to Sutter; Lewis was not only present, but close by; and the altercation lasted more than a few seconds, a jury could reasonably find that the Lewis had reason to know that excessive force was being used and could have stopped it. *Kirkwood*, 683 F. Supp. 2d at 830; *see Pinkey*, 583 F. Supp. 2d at 984. And, even if Lewis could not have physically come between Carroll and Sutter, she could have at least told Carroll to stop. *Davis*, 2010 WL 1489988, at *3; *see Yang*, 37 F3.d at 285.

Finally, the speed at which these events occurred and the reasonableness of Lewis's response are issues for the jury to decide. *Davis*, 2010 WL 1489988, at *3. As "[t]he parties

have not identified any consideration that would warrant straying from [the Seventh Circuit's] directive in *Lanigan*, which instructs that the intervention inquiry should be left to the jury," *Abdullahi v. City of Madison*, 423 F.3d 763, 774 (7th Cir. 2005), issues of triable fact remain for the jury on Sutter's failure to intervene claim against Lewis.

### 3. Qualified Immunity

Defendants further maintain that they are entitled to qualified immunity on Sutter's excessive force claim under § 1983. "[Q]ualified immunity protects government officials from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v Vill. of West Milwaukee*, 671 F.3d 649, 657 (7th Cir. 2012) (quoting *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010)). Claims of qualified immunity involve two inquiries: (1) whether the official violated a constitutional or statutory right; and (2) whether the right was clearly established at the time of the alleged misconduct. *Id.* (citing *Whitlock v. Brown*, 596 F.3d 406, 410 (7th Cir. 2010)). A negative answer to either question entitles the official to the defense. *Id.*; *Hanes v. Zurich*, 578 F.3d 491, 493 (7th Cir. 2009). A plaintiff may defeat a qualified immunity defense by showing that "the conduct at issue is so egregious that no reasonable person could have believed that it would not violate clearly established rights."[5] *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008); *see also Smith*, 242 F.3d at 742.

---

[5] The Seventh Circuit has recognized that the excessive force standard is "well settled and, since it is already an objective standard based on a reasonable police officer, qualified immunity normally will not apply." *DuFour-Dowell*, 969 F. Supp. at 1120-21(citing *Lanigan*, 110 F.3d at 476-77). "However, the Seventh Circuit has left open the possibility that the applicable law may be sufficiently unsettled to justify application of the defense in a particular case." *Id.* (citing *Lanigan*, 110 F.3d at 477).

*a. Officer Carroll Is Not Entitled To Qualified Immunity*

At the time of Sutter's arrest, "it was of course clearly established that a police officer may not use excessive force in arresting an individual." *Holmes*, 511 F.3d at 687; *see Norris*, 2006 WL 753131, at *14 ("[T]he Seventh Circuit [has] made clear that police officers do not have the right to inflict 'wholly gratuitous' force on a subdued suspect who was not resisting arrest." (citing *Clash*, 77 F.3d at 1048)). Accepting as true Sutter's contentions that he did not offer any physical resistance beyond pulling his left arm away as a pain reflex, Carroll could not have reasonably thought that the allegedly gratuitous force he employed against Sutter once Sutter was on the ground was justified. *See Holmes*, 511 F.3d at 687; *Susanowiz v. Town of Hamilton*, No. 1:10-cv-26, 2011 WL 65777, at *6 (N.D. Ind. Jan. 10, 2011). That is, no reasonable officer could have thought that it was permissible to bash an unresisting arrestee's head into the ground three or four times after he had been taken down and subdued. *See Holmes*, 511 F.3d at 687 (citing *Payne*, 337 F.3d at 780); *Hayes*, 2009 WL 700232, at *4 ("It has long been well established that a police officer may not continue to use force against a suspect who is subdued and complying with the officer's orders.") (collecting cases).

Therefore, on this record, Carroll is not entitled to qualified immunity. *See White v. Gerardot*, No. 1:05-CV-382, 2007 WL 541819, at *7 (N.D. Ind. Feb. 15, 2007) ("[W]hen factual disputes surrounding the conduct at issue bear directly upon whether it was objectively reasonable for [the officer] to believe he acted in compliance with clearly established law, then summary judgment on the issue of qualified immunity must be denied." (internal quotation marks and citations omitted)). Accordingly, Carroll's motion for summary judgment on Sutter's excessive force claim will be DENIED.

### b.  *Officer Lewis Is Not Entitled To Qualified Immunity*

As for Lewis, first, there is an issue as to whether Carroll actually violated any of Sutter's

rights, requiring her intervention.  *Ferrell v. Bieker*, No. 1:03-CV-27-TS, 2006 WL 287173, at

*12 (N.D. Ind. Feb. 3, 2006).  Second, there is a material issue of fact as to whether Lewis had

knowledge of the alleged violations or whether she had a realistic opportunity to prevent such

violations if they did occur.  *Id.*

But, like Carroll, Lewis's duty to intervene must have been clearly established at the time

of the alleged violation.  *Davis v. Peoria Cnty.*, No. 08-cv-1118, 2009 WL 3258318, at *10 (C.D.

Ill. Oct. 8, 2009).  "It was clearly established well before [2009] that officers have a duty to

intervene where possible to prevent or stop the application of unreasonable force, even if they

could have 'only called for a backup, called for help, or at least cautioned [the excessive-force

defendants] to stop."  *Id.* (quoting *Yang*, 37 F.3d at 285) (citing *Abdullahi*, 423 F.3d at 774;

*Lanigan*, 110 F.3d at 477-78).  Put another way, "the state of the law at that time was such that

[Lewis] had 'reasonable notice' that [her] failure to take action with regard to [Carroll's] alleged

battery could potentially violate the Constitution."  *Henderson v. Bramlet*, No. 3:08-cv-15-

DGW, 2012 WL 506975, at *6 (S.D. Ill. Feb. 15, 2012) (citing *Roe v. Elyea*, 631 F.3d 843, 858-

59 (7th Cir. 2011)).

Ultimately, "[b]ecause there is an issue of fact as to whether intervention was necessary

or possible, qualified immunity does not apply to Lewis at this stage of the proceedings."

*Ferrell*, 2006 WL 287173, at *12.  Therefore, a grant of summary judgment in Lewis's favor

based on qualified immunity will be DENIED.  *Henderson*, 2012 WL 506975, at *6 (denying

summary judgment based on qualified immunity "[d]ue to the open questions of fact"); *see also*

*Smith v. Hunt*, No. 08 C 6982, 2010 WL 3842374, at *14 (N.D. Ill. Sept. 27, 2010) ("[W]here

'the facts draw into question the objective reasonableness of the police action under the alleged

circumstances,' the court should deny summary judgment to allow for the further development

of the disputed facts." (quoting *Clash*, 77 F.3d at 1048)).

### B. Sutter's State Law Claims

Sutter also asserts a tort claim of battery under Indiana law against the Defendants

personally. Ultimately, both Defendants are entitled to summary judgment on Sutter's state law

claims.

The ITCA limits when a plaintiff can sue a governmental employee personally. *Perry v.

Thomas*, No. 1:09-cv-1051-TWP-MJD, 2011 WL 693622, at *6 (S.D. Ind. Feb. 18, 2011) (citing

*Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003)). Specifically, Indiana Code § 34-13-

3-5(b) provides that a "lawsuit alleging that an employee acted within the scope of the

employee's employment bars an action by the claimant against the employee personally."

*McAllister v. Town of Burns Harbor*, 693 F. Supp. 2d 815, 822 (N.D. Ind. 2010) (quoting IND.

CODE § 34-13-3-5(b)); *see also Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1114-5 (Ind. Ct. App.

2001) ("In general, a plaintiff may not maintain an action against a government employee

personally if that employee was acting within the scope of his employment."). Accordingly,

"[a]n allegation in a complaint that an employee acted within the scope of his or her employment

bars a claim against the employee." *Bradley v. Tibbles*, No. 3:08-CV-366-JVB, 2009 WL

3242101, at *4 (N.D. Ind. Sept. 30, 2009) (citing IND. CODE § 34-13-3-5(b)); *accord D.D. ex rel

R.D. v. Gary Cmty. Sch. Corp.*, No. 2:09 CV 78 JM, 2009 WL 3241592, at *6 (N.D. Ind. Sept.

28, 2009) (citations omitted); *see Hupson v. Ind. Dep't of Corr.*, No. 1:11-cv-0109-TWP-DML,

2011 WL 4730545, at *6 (S.D. Ind. Oct. 7, 2011) (holding state law claims against defendants personally barred when complaint alleged that defendants were acting in the scope of their employment); *In re Estate of Lee v. City of Washington*, No. 3:09-cv-00016-RLY-WGH, 2010 WL 4778725, at *17 (S.D. Ind. Nov. 16, 2010) (same); *McAllister*, 693 F. Supp. 2d at 822-23 (same).

Rather, to bring suit against the employee personally, the plaintiff must allege that an employee's act or omission that causes a loss is either "(1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." IND. CODE § 34-13-3-5(c); *Miner*, 755 N.E.2d at 1115. The complaint must further contain a reasonable factual basis supporting the allegations. IND. CODE § 34-13-3-5(c).

Moreover, the ITCA's purpose is to "ensure that public employees can exercise their independent judgment when necessary to carry out their duties without threat of harassment by litigation or threats of litigation over decisions made within the scope of their employment." *Perry*, 2011 WL 693622, at *6 (quoting *Wilson v. Isaacs*, 917 N.E.2d 1251, 1258 (Ind. Ct. App. 2009), *aff'd in part & vacated in part*, 929 N.E.2d 200, 204 (Ind. 2010) (summarily affirming decision as to claims against the officer personally)). An employee's conduct is considered "within the scope of employment" when it is of the same general nature as that authorized or incidental to the conduct authorized. *Id.* (citing *Wilson*, 917 N.E.2d at 1258); *McAllister*, 693 F. Supp. 2d at 823 (quoting same). The ITCA "goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business." *McConnell v. McKillip*, 573 F. Supp. 2d 1090, 1103-4 (S.D. Ind.

2008) (citing *City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. Ct. App. 1999)).

Here, although Sutter alleges in his Complaint, in the context of punitive damages, that the Defendants' conduct was "willful, wanton," (Compl. ¶ 10), he also explicitly alleges that "[t]he Defendants, and each of them, were acting within the scope of their employment, and under color of law, when on or about August 22, 2009, the officers subjected the Plaintiff to battery, and excessive and unreasonable force . . . ." (Compl. ¶ 2.) Defendants subsequently admitted that Carroll and Lewis were acting within the scope of their employment as officers of the South Whitley Police Department. (Answer ¶ 2.)

As noted, an allegation that a governmental employee was acting within the scope of his employment generally bars a claim against that employee personally. *See, e.g.*, *Bradley*, 2009 WL 3242101, at *4; *D.D.*, 2009 WL 3241592, at *6. And Sutter has never acted to amend his Complaint to remove it. *Henry v. Hogarth*, No. 2:09-cv-217-WTL-WGH, 2011 WL 744890, at *3 (S.D. Ind. Feb. 23, 2011) (noting, in granting defendant summary judgment on plaintiff's state law tort claims against defendant personally, that her complaint unequivocally alleged that defendant acted within the scope of his employment at all relevant times and that plaintiff did not move to amend her complaint to remove this allegation). Although, in responding to the summary judgment motion, Sutter "attempts to put some meat on the bones of [his] claims against the individually named Defendants," arguing that they utilized force "in a manner outside the scope of the Defendants' employment as officers" and acted maliciously or willfully and wantonly (Pl.'s Mem. in Opp. 18-19), he "cannot amend [his] complaint through arguments in a brief." *Hofmann v. S. Madison Cmty. Sch. Corp.*, No. 1:10-cv-00015-TWP-TAB, 2010 WL 4683938, at *3 (S.D. Ind. Nov. 10, 2010).

Furthermore, the undisputed facts disclose that, at the time of the incident, Carroll and Lewis were in uniform in a marked police vehicle, patrolling the area, reacting to Sutter's suspicious driving, and effectuating an arrest for an intoxicated driver, conduct which was "undeniably of the same general nature [as their] everyday duties as [ ] law officer[s] for [South Whitley]." *McAllister*, 693 F. Supp. 2d at 823; *see Wilson*, 917 N.E.2d at 1258. Moreover, in arresting Sutter, Carroll and Lewis were undoubtedly furthering their employee's business, entitling them to the ITCA's protections. *See McConnell*, 573 F. Supp. 2d at 1103-4. Therefore, as Sutter's claims all relate to acts that occurred within the scope of their employment, Carroll and Lewis are entitled to summary judgment on Sutter's state law claims. *Cf. Perry v. City of Indianapolis*, No. 1:11-cv-172-RLY-TAB, 2012 WL 729728, at *4 (S.D. Ind. Mar. 6, 2012) (dismissing state law tort claims against individual defendants under 12(b)(6) when all the plaintiff's claims related to acts that occurred within the scope of defendants' employment).

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (Docket # 26) is DENIED IN PART and GRANTED IN PART. Plaintiff will be permitted to go forward with his excessive force claims under § 1983 against Defendants Carroll and Lewis. The Defendants are entitled, however, to summary judgment on Sutter's state law claims, and, accordingly, he shall take nothing from Carroll and Lewis on his state law tort claim.

SO ORDERED.

Entered this 20th day of June, 2012.

/s/ Roger B. Cosbey
Roger B. Cosbey
United States Magistrate Judge